1

2

3                    UNITED STATES DISTRICT COURT

4                 NORTHERN DISTRICT OF CALIFORNIA

5                          SAN JOSE DIVISION

6

7   TROY WILLIS,                            Case No.  21-cv-00819-BLF

8                    Plaintiff,

9          v.                              **ORDER DENYING MOTION FOR
                                           CLASS CERTIFICATION**
10  KONING & ASSOCIATES, et al.,
                                           [Re:  ECF No. 48]
11                   Defendants.

12

13          Plaintiff Troy Willis filed this employment case against Defendants Koning & Associates

14  ("K&A") and Chris Koning ("Koning"), alleging violations of federal and state statutes.  Plaintiff

15  has moved to certify a class including "[a]ll current and former insurance adjusters employed by

16  Koning & Associates from December 15, 2017 through the date of the order granting class

17  certification."  ECF No. 48 ("Mot."); *see also* ECF No. 54 ("Reply").  Defendants oppose, arguing

18  class certification is improper.  ECF No. 52 ("Opp.").  The Court held a hearing on this motion on

19  February 23, 2023.  For the reasons explained below, the Court DENIES Plaintiff's motion for

20  class certification.

21  **I.      BACKGROUND**

22          As alleged in the Complaint, Plaintiff Troy Willis is a former employee of Koning &

23  Associates, where he worked as a general insurance adjuster.  ECF No. 1 ("Compl.") ¶¶ 15-16.

24  He alleges that Defendants failed to compensate insurance adjusters for all the time they worked.

25  *Id.* ¶ 8.  Willis states that K&A compensated class members for hours billed to clients, not hours

26  actually worked, and that they improperly classified adjusters as exempt employees.  *Id.* ¶¶ 19-20.

27  He also alleges that K&A failed to provide proper meal breaks or rest periods and that it failed to

28  reimburse class members for mileage.  *Id.* ¶ 33.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court

Northern District of California

Plaintiff brings nine claims: (1) failure to pay overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; (2) failure to pay overtime wages in violation of California Labor Code ("Labor Code") §§ 510, 1194, 1198 and IWC Wage Order No. 4-2001, § 3; (3) failure to provide required meal periods in violation of Labor Code §§ 226.7, 512 and IWC Wage Order No. 4-2001, § 11; (4) failure to provide required rest periods in violation of Labor Code § 226.7 and IWC Wage Order No. 4-2001, § 12; (5) failure to furnish accurate itemized wage statements in violation of Labor Code § 226(a) and IWC Wage Order No. 4-2001, § 7; (6) failure to pay all wages due to discharged and quitting employees in violation of Labor Code §§ 201, 202, 203; (7) failure to indemnify employees for necessary expenditures incurred in violation of Labor Code §§ 406, 2802; (8) unfair and unlawful business practices in violation of California Business & Professions Code § 17200, *et seq.*; and (9) a representative action for civil penalties under the California Private Attorneys General Act ("PAGA"), Labor Code §§ 2698-2699.5. Compl. ¶¶ 34-75. Plaintiff seeks to represent a class and a FLSA collective. *Id.* ¶¶ 27-33.

Now before the Court is Plaintiff's motion for class certification. *See* Mot.

## II.    EVIDENTIARY OBJECTIONS

Before addressing the merits of the class certification motion, the Court will consider the parties' evidentiary objections.

Plaintiff objects to six declarations submitted by Defendants with their opposition brief. ECF No. 54-2 ("P Obj."). These are declarations from K&A employees. *See* Opp., Ex. E (ECF No. 52-5) ("Peckham Decl."); Ex. F (ECF No. 52-6) ("Miles Decl."); Ex. G (ECF No. 52-7) ("Frisina Decl."); Ex. I (ECF No. 52-9) ("Lanigan Decl."); Ex. J (ECF No. 52-10) ("Absher Decl."); Ex. L (ECF No. 52-12) ("Tyson-Grimes Decl."). Willis objects to these declarations on the basis that they lack foundation and that they are irrelevant.[1] P. Obj. at 1. The information in the declarations from other employees is relevant to whether there are common questions and whether those common questions predominate. Plaintiff objects to the employees' statements that

---

[1] Plaintiff correctly cites to Evidence Rule 602 for foundation. P. Obj. at 1. But Plaintiff cites to Evidence Rules 801 and 802 for relevance. *See id.* Rules 801 and 802 are about hearsay. *See* F. R. Evid. 801, 802. The Court will construe the objection as to relevance as being brought under Rules 401 and 402. *See* Fed. R. Evid. 401, 402.

United States District Court
Northern District of California

1  "they 'understood' or 'believe' or 'were told' they could take meal and rest periods" and that, as to

2  mileage reimbursement, they "belie[ve] they were 'fairly reimbursed' or that [K&A] 'makes up

3  any difference.'" *Id.*  These statements describe each individual employee's own state of mind, of

4  which each individual had personal knowledge, and they therefore do not lack foundation.  *See* F.

5  R. Evid. 602.  The Court also notes that it does not consider the employees' statements as to

6  mileage reimbursement, and while it does cite to the statements on meal and rest periods, those

7  statements are in no way necessary to the Court's decision.  The Court OVERRULES Plaintiff's

8  objections.

9      Defendants object to a declaration submitted by Plaintiff with his reply brief.  ECF No. 55

10  ("D. Obj.").  Plaintiff submitted a declaration from Nancy Hamilton, a former K&A adjuster, with

11  his reply brief.  *See* Declaration of Corey Bennett (ECF No. 54-1) ("Bennett Decl."), Ex. A

12  ("Hamilton Decl.").  Defendants assert that the Court should strike this declaration because it was

13  improperly submitted for the first time on reply.  D. Obj. at 1-2.  Civil Local Rule 7-3 allows a

14  party to object to new evidence submitted in a reply brief.  *See* Civ. L.R. 7-3(d)(1).  The Court

15  agrees with Defendants that the Hamilton declaration is new evidence that was improperly

16  submitted for the first time on reply.  *See Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 308 n.5

17  (N.D. Cal. 2005) (striking new evidence in witness declaration as improper reply evidence).

18  Plaintiff has not provided a good reason why the declaration was not submitted with his opening

19  brief.  The Court SUSTAINS this objection and will STRIKE the declaration of Nancy Hamilton.

20  ### III.   CLASS CERTIFICATION

21      Federal Rule of Civil Procedure 23 governs class certification.  "The party seeking class

22  certification has the burden of affirmatively demonstrating that the class meets the requirements of

23  [Rule] 23."  *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1066 (9th Cir. 2021) (citation omitted).

24  "As a threshold matter, a class must first meet the four requirements of Rule 23(a): (1) numerosity,

25  (2) commonality, (3) typicality, and (4) adequacy of representation."  *Id*.

26      "In addition to Rule 23(a)'s requirements, the class must meet the requirements of at least

27  one of the three different types of classes set forth in Rule 23(b)."  *Stromberg*, 14 F.4th at 1066

28  (internal quotation marks and citation omitted); *see also Olean Wholesale Grocery Coop., Inc. v.*

*Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (en banc).  "To qualify for the third category, Rule 23(b)(3), the district court must find that 'the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *Olean*, 31 F.4th at 663-64 (quoting Rule 23(b)(3)).

"Before it can certify a class, a district court must be satisfied, after a rigorous analysis, that the prerequisites of both Rule 23(a) and 23(b)(3) have been satisfied."  *Olean*, 31 F.4th at 664 (internal quotation marks and citation omitted).  "[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence."  *Id.* at 665.  "In carrying the burden of proving facts necessary for certifying a class under Rule 23(b)(3), plaintiffs may use any admissible evidence."  *Id.*

Plaintiff asserts that that all four requirements of Rule 23(a) are satisfied in this case, and that certification of a class is appropriate under Rule 23(b)(3).  Defendants argue that Plaintiff has not satisfied the requirements of either Rule 23(a) or Rule 23(b)(3).

### A.    Numerosity

Rule 23(a)(1) requires that the size of the proposed class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "No exact numerical cut-off is required; rather, the specific facts of each case must be considered."  *Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA (PJWx), 2015 WL 4698475, at *3 (C.D. Cal. Apr. 27, 2015).  "[N]umerosity is presumed where the plaintiff class contains forty or more members."  *Id.*  Where a class falls "into the gray area between 21 and 40 class members," the court considers factors other than class size in determining numerosity, which include: "(1) the judicial economy that will arise from avoiding multiple actions; (2) the geographic dispersion of members of the proposed class; (3) the financial resources of those members; (4) the ability of the members to file individual suits; and (5) requests for prospective relief that may have an effect on future class members."  *Sandoval v. M1 Auto Collisions Centers*, 309 F.R.D. 549, 562 (N.D. Cal. 2015) (quoting *Ansari v. New York Univ.*, 179 F.R.D. 112, 114-15 (S.D.N.Y. 1998)).

In response to an interrogatory, Defendants produced a list of all K&A adjusters that fit

United States District Court
Northern District of California

United States District Court
Northern District of California

1   within Plaintiff's proposed class definition.  *See* Opp., Ex. K (ECF No. 52-11) ("Stitt Decl."), Ex.

2   1.  That list, produced on November 5, 2021, included 35 individuals.  *See id.*  Defendant argues

3   that two of those individuals would not be in the proposed class, because they live in Arizona.

4   Opp. at 13.  Plaintiff argues that more adjusters may have been hired since the list was produced

5   on November 5, 2021, and therefore the class may be larger by now.  Reply at 4.  But Plaintiff has

6   provided no evidence of additional class members.  Because the class falls into the gray area

7   between 21 and 40 class members, the Court will apply the *Sandoval* factors.

8       First, the Court considers the judicial economy that will arise from avoiding multiple

9   actions.  *Sandoval*, 309 F.R.D. at 562.  The Court will consider whether "individual members of

10   the prospective class have filed or threatened to file their own actions."  *Id.* (quoting *Ansari*, 179

11   F.R.D. at 115).  Here, as in *Sandoval*, there is no evidence that other prospective class members

12   have filed or have threatened to file their own actions.  This factor therefore weighs against

13   granting class certification.

14       Second, the Court considers the geographic dispersion of the proposed class members.

15   *Sandoval*, 309 F.R.D. at 562.  Here, the putative class members are all located within California.

16   They are not all in the same region of the state, as in *Sandoval*, but they are all within the state.

17   This factor weighs slightly against class certification.

18       Third, the Court considers the financial resources of proposed class members.  *Sandoval*,

19   309 F.R.D. at 562.  Again, as in *Sandoval*, there is no evidence that the proposed class members

20   are "disproportionately economically disadvantaged."  *See id.*  This factor weighs against granting

21   class certification.

22       Fourth, the Court considers the ability of class members to file individual suits.  *Sandoval*,

23   309 F.R.D. at 562.  As in *Sandoval*, "this is not a case where potential class members have no

24   financial incentive to bring suit."  *Id.*  And, as noted by Defendants, potential class members could

25   bring claims before the California labor commissioner.  Opp. at 16; *see also Sandoval*, 309 F.R.D.

26   at 562 ("As Defendants argue, individual class members can bring wage and hour claims before

27   the California labor commissioner.").  But Willis argues that the Court should consider that

28   potential class members make only $25-35 per hour and would have to consider the risks of

litigation, legal fees and costs, and the potential disruption to work relationships.  Reply at 5.  The Court finds that this factor weighs slightly against class certification.

And finally, the Court considers whether there is a request for prospective relief that may have an effect on future class members.  *Sandoval*, 309 F.R.D. at 562.  Defendants argue that Plaintiff does not have standing to seek injunctive relief.  Opp. at 16-17.  Willis does not dispute this, but he argues that the fifth factor is not only about injunctive relief, but rather whether the relief would benefit future employees.  Reply at 6.  And he argues that it would, because if the Court determines that the Defendants have misclassified employees as exempt, it would benefit future employees.  *Id.*  The Court agrees with Willis.  Therefore, this factor weighs in favor of class certification.

Taken together, the Court determines that these factors weigh against a finding of numerosity, and the Court determines that numerosity is not satisfied.  This factor alone is sufficient for the Court to deny class certification.  But the Court will also address commonality, predominance, and typicality.

### B.        Commonality, Predominance, and Typicality

Defendants contest commonality, predominance, and typicality as to three of Plaintiff's central theories of liability: (1) that employees were improperly classified as exempt; (2) that employees were not reimbursed for gas mileage; and (3) that employees were not given meal and rest breaks as required by law.  Opp. at 17-28.  The Court will address commonality, predominance, and/or typicality, as relevant, for each of these three theories.

Rule 23(a)(2) requires the plaintiff to show that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  But the requirement cannot be satisfied by any common question.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Id.* at 349-50 (internal quotation marks and citation omitted).  The claim of common injury must depend on a common contention "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* at 350.  "[C]ommonality only requires a single significant question

of law or fact." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012), *overruled on other grounds by Olean*, 31 F.4th 651.

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Olean*, 31 F.4th at 668 (internal quotation marks and citation omitted). The plaintiffs need not show that they are likely to succeed on the common issues in the case. *See id.* at 667. "[A] district court cannot decline certification merely because it considers plaintiffs' evidence relating to the common question to be unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof on that issue." *Id.* If the plaintiffs present evidence that could sustain a reasonable jury verdict on the merits of a common question as to all class members, a district court may conclude that the plaintiffs have carried their burden under Rule 23(b)(3). *See id.*

Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (internal quotation marks and citation omitted). "The requirement is permissive, such that representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks and citation omitted). However, "[a] court should not certify a class if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id*. (internal quotation marks and citation omitted).

### 1. Misclassification

Plaintiff alleges that K&A improperly classified its adjusters as exempt employees.

Compl. ¶ 20; *see also* Mot. at 8.  To be classified as exempt, an employee must meet the salary

basis test.   Under federal regulation, "[a]n employee will be considered to be paid on a 'salary

basis' . . . if the employee regularly receives each pay period on a weekly, or less frequent basis, a

predetermined amount constituting all or part of the employee's compensation, which amount is

not subject to reduction because of variations in the quality or quantity of the work performed."

29 C.F.R. § 541.602(a).  But an exempt employee can receive a minimum guaranteed salary, plus

extra compensation, and still satisfy the salary basis test.  *See id.* § 541.604.  Federal regulation

provides:

> (a) An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis. Thus, for example, an exempt employee guaranteed at least $684 each week paid on a salary basis may also receive additional compensation of a one percent commission on sales. An exempt employee also may receive a percentage of the sales or profits of the employer if the employment arrangement also includes a guarantee of at least $684 each week paid on a salary basis. Similarly, the exemption is not lost if an exempt employee who is guaranteed at least $684 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek. Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off.

> (b) An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned. The reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek. Thus, for example, an exempt employee guaranteed compensation of at least $725 for any week in which the employee performs any work, and who normally works four or five shifts each week, may be paid $210 per shift without violating the $684–per-week salary basis requirement. The reasonable relationship requirement applies only if the employee's pay is computed on an hourly, daily or shift basis. It does not apply, for example, to an exempt store manager paid a guaranteed salary per week that exceeds the current salary level who also receives a commission of one-half percent of all sales in the store or five percent of the store's profits, which in some weeks may total as much as, or even more than, the guaranteed salary.

1    *Id.*

2          At the hearing, the parties explained K&A's compensation system as follows.  An

3    employee is hired with an hourly compensation rate and a monthly guarantee of a certain number

4    of hours.  An adjuster is always paid at the hourly rate for the guaranteed number of hours,

5    regardless of how many hours they actually work.  Employees also document the number of hours

6    they actually work.  Employees then submit their log of hours to their branch manager.  The

7    branch managers review the log sheets and make adjustments, up or down, to determine the

8    number of hours that should be billed to the client.  The adjusted number is the employee's

9    "billable hours," and the branch manager submits this number of hours for invoicing.  And then, if

10   an employee's billable hours, determined by the branch manager, exceeded the employee's

11   monthly guarantee, the employee would be paid their hourly compensation rate for any billable

12   hours in excess of the monthly guarantee.  Defendants argue that, under this compensation

13   scheme, employees were compensated on a salary basis, and they were therefore properly

14   classified as exempt.  Opp. at 18-20.  Defendants specifically argue that this compensation scheme

15   satisfies the salary basis test based on 29 C.F.R. § 541.604(b), above.  *Id.*

16         Plaintiff argues that class certification is proper because whether employees are

17   misclassified as exempt is a common question capable of classwide resolution.  Mot. at 12-13.

18   Defendants argue that there is no commonality because 29 C.F.R. § 541.604(b) requires

19   individualized inquiries.  Opp. at 18-20.  They also argue that Plaintiff is not typical for this claim.

20   Opp. at 27.

21         Under the federal regulation, "[a]n exempt employee's earnings may be computed on an

22   hourly, a daily or a shift basis, without losing the exemption or violating the salary basis

23   requirement, if the employment arrangement also includes a guarantee of at least the minimum

24   weekly required amount paid on a salary basis regardless of the number of hours, days or shifts

25   worked, and a reasonable relationship exists between the guaranteed amount and the amount

26   actually earned."  29 C.F.R. § 541.604(b).  The regulation provides that "[t]he reasonable

27   relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual

28   earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled

United States District Court
Northern District of California

workweek." *Id.*  Defendants argue that the question of whether there was a reasonable relationship is an individualized question.  Opp. at 19-20.  Defendants also argue that Plaintiff is not typical because he worked very long hours—seven days a week, beginning at 4:30 a.m. and ending at 10:30 or 11:00 p.m.  Opp. at 27; *see* Opp., Ex. B (ECF No. 52-2) ("Willis Dep.") at 17:6-17:19.  He was the only employee to work such long hours.  Opp., Ex. C (ECF No. 52-3) ("Koning Decl.") ¶ 4.

The Court agrees with Defendants.  Plaintiff is correct that other courts have granted class certification on the question of misclassification.  *See, e.g.*, *Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 427-28 (N.D. Cal. 2011); *Sales v. United Rd. Servs., Inc.*, No. 19-cv-08404-JST, 2022 WL 1601416, at *4-7 (N.D. Cal. Mar. 29, 2022).  But here, because of the federal regulation Defendants rely on, the Court determines that deciding whether employees were properly classified as exempt will require individualized inquiries.  And it further determines that Willis is not a typical plaintiff for this claim.  The hours worked by Willis were so extreme that the relationship between the guaranteed amount and the amount actually earned would be quite different for him as compared to the other putative class members.  There is a concern that Willis would be concerned with arguments that are unique to him.

The Court determines that common questions do not predominate as to misclassification. The Court further determines that Willis has not satisfied typicality as to this theory of liability. The Court further notes that Plaintiff's other claims all rely on a determination that employees were misclassified as exempt.

### 2.  Mileage Reimbursement

Plaintiff alleges that Defendants did not properly reimburse employees for mileage, as required by law.  Compl. ¶ 33.  Defendants argue that common questions do not predominate as to reimbursement, and Defendants further argue that Plaintiff is not typical for the reimbursement claim.  Opp. at 20-23, 28.

K&A adjusters usually cover claims in assigned geographic territories.  Opp., Ex. A (ECF No. 52-1) ("Koning Dep.") at 29:17-29:20.  Koning provides mileage reimbursement based on the mileage from Koning's nearest office to the adjuster's destination, of at least the IRS mileage

reimbursement rate.  *Id.* at 24:14-24:22, 56:7-16; Koning Decl. ¶ 5; Opp., Ex. D (ECF No. 52-4) ("Ingalls Dep.") at 42:22-25, 49:20-50:12, 79:5-79:16.  Willis was unique in that he was a "floater."  Ingalls Dep. at 22:2-22:11.  As a floater, Willis received a monthly mileage stipend of $800 per month plus per-mile reimbursement at the IRS rate, with mileage measured from the nearest Koning office to his destination.  Opp., Ex. H (ECF No. 52-8) ("Johnson Dep.") at 53:16-54:20; Koning Dep. at 55:17-56:16; Koning Decl. ¶ 5.  One other adjuster in the putative class was a floater who received a stipend in addition to per-mile reimbursement.  Ingalls Dep. at 26:13-27:14; Koning Dep. at 29:8-29:16.

Defendants argue that the fact that Willis was a floater and received the additional monthly stipend means that common questions do not predominate and that he was not a typical Plaintiff for this claim.  Opp. at 20-23, 28.  The Court agrees that Willis was not a typical plaintiff.  The fact that he received the additional $800 per month stipend creates different questions as to whether his mileage reimbursement was sufficient under the California Labor Code as compared to the other class members.

### 3.  Meal and Rest Breaks

Plaintiff alleges that Defendants did not provide meal or rest breaks as required by law. Compl. ¶ 33.  Defendants argue that Plaintiff cannot show common questions of law or fact predominate as to the meal and rest break claims.  Opp. at 23-26.  Defendants assert that there is no commonality because Plaintiff is not asserting that Defendants have a policy or practice that made breaks difficult to take.  *Id.* at 25.  Instead, Defendants argue, Plaintiff's theory is that he was too busy to take breaks, which would require an individualized inquiry for each putative class member.  *Id.*  In reply, Plaintiff argues that the K&A employee handbook contains no meal or rest period policies for (allegedly misclassified) exempt adjusters.  Reply at 7; *see* Declaration of Joshua Boxer, ECF No. 48-1 ("Boxer Decl."), Ex. F (employee handbook).

"[T]o comply with meal period laws, an employer must provide a 'reasonable opportunity to take an uninterrupted 30-minute break, and [must] not impede or discourage [employees] from doing so.'"  *Zayers v. Kiewit Infrastructure W. Co.*, No. 16-CV-06405-PSG (PJW), 2017 WL 4990460, at *3 (C.D. Cal. Oct. 26, 2017) (quoting *Brinker Restaurant Corp. v. Superior Court*, 53

United States District Court
Northern District of California

1

Cal. 4th 1004, 1040 (2012)).  "[E]mployers in California are not required to have a written rest

2

break policy, only to follow the law." *In re: AutoZone, Inc.*, No. 3:10-md-02159-CRB, 2016 WL

3

6834138, at *2 (N.D. Cal. Nov. 21, 2016); *see also Roberts v. Trimac Transp. Servs. (W.), Inc.*,

4

No. C12-05302, 2013 WL 4647223, at *3 (N.D. Cal. 2013) ("[U]nder California law, the absence

5

of a formal written policy does not constitute a violation of the meal and rest period." (quoting

6

*Green v. Lawrence Serv. Co.*, No. LA CV12-06155 JAK, 2013 WL 3907506, at *8 (C.D. Cal. July

7

23, 2013))).  "[T]he absence of a policy bears on the question of whether an employer has made

8

something available," such as meal or rest breaks, but it "does 'not preclude the need to examine

9

whether [the things] were in fact made available to the individual' employees." *In re AutoZone,*

10

*Inc., Wage & Hour Emp. Pracs. Litig.*, 289 F.R.D. 526, 541 (N.D. Cal. 2012) (citing *Wong v. AT*

11

*& T Mobility Servs. LLC*, No. CV 10-8869-GW(FMOx), 2011 U.S. Dist. LEXIS 125988, at *16 &

12

n.1 (C.D. Cal. Oct. 20, 2011)).  "In other words, the absence of a policy does not provide a

13

common issue that would support class certification." *Id.*  "Other courts have denied certification

14

in the 'absence of any explicit [employer policy] to which the missed meals can be attributed and

15

in light of the individualized inquiries necessary to evaluate the [employer practices] as to meal

16

breaks." *Id.* at 542 (citing *Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180, 208-09 (N.D. Cal.

17

2009)).

18

      In his deposition, Plaintiff stated that he "was not always able to take a break when [he]

19

was working at Koning." Willis Dep. at 94:3-94:23.  He stated: "there were times when I could

20

not [take a break] because I didn't want to be late for an appointment, or there was [sic] times that

21

I had work that I was at a job site longer than I would have thought I would have been because of

22

the amount of damages that did not allow me to take a break." *Id.*  Defendants have submitted

23

declarations from several other putative class members that said that they understood that they

24

could, and did, take meal and rest breaks as often as they wished.  Peckham Decl. ¶ 4; Miles Decl.

25

¶ 5; Frisina Decl. ¶ 3; Lanigan Decl. ¶ 3; Absher Decl. ¶ 3; Tyson-Grimes Decl. ¶ 5.  Plaintiff does

26

not assert that there was a common policy that prevented adjusters from taking meal or rest breaks,

27

but merely that there was a lack of policy as to meal and rest breaks at all.  The Court determines

28

that common questions do not predominate as to meal and rest breaks.  Instead, the Court would

be required to conduct individualized inquiries for each class member to determine whether K&A complied with the meal and rest break laws.

*   *   *   *   *

The Court concludes Willis has not shown that common questions of law and fact predominate.  Further, Willis has not satisfied the typicality requirement.

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's motion for class certification is DENIED.

Dated:  March 15, 2023

_____
BETH LABSON FREEMAN
United States District Judge